UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-156 (SRN/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) GOVERNMENT'S MOTION |
| | ) FOR RECONSIDERATION: |
| v. | ) ORDER TO RETURN TO |
| | ) STATE CUSTODY |
| (1) DESEAN JAMES SOLOMON, | ) |
| | ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Esther Soria Mignanelli, Joseph Teirab, and Thomas Calhoun-Lopez Assistant United States Attorneys, respectfully requests that the Court reconsider its order of May 16, 2023, returning Defendant Desean James Solomon to state custody. Since the hearing on the matter, the United States has obtained new information that the United States believes is a basis for the Court to remand Solomon to federal custody.

## I. BACKGROUND

a. *The Instant Federal Charges and Solomon's State Custody.*

Solomon is federally charged with one count of RICO conspiracy, and two counts of using a firearm in furtherance of a crime of violence resulting in death. (ECF 1.) Solomon is charged with membership in the Bloods street gang, a criminal conspiracy that has "engaged in, among other things, acts of

violence to include murder, assault, and robbery, as well as controlled substance distribution and firearms trafficking." (*Id.* at 2.) The indictment also alleges that members of this criminal enterprise preserve and protect "the power, territory, reputation, and profits of the enterprise through threats, intimidation, violence, and destruction, including murder, robbery, assault, and other acts of violence," and keep victims "in fear of the enterprise and in fear of its leaders, members, and associates." (*Id.* at 4.) The indictment notes that members of the enterprise "are forbidden from cooperating with law enforcement." (*Id.* at 6.)

At the time of the indictment, Solomon was serving a sentence in the Minnesota Department of Corrections (DOC) for 2nd Degree Murder – Drive by Shooting; 1st Degree Riot – Death Results; and Possession of a Firearm by a Prohibited Person. 27-CR-20-15534. He was serving his sentence at Minnesota Correctional Facility St. Cloud (MCF-St. Cloud). According to the DOC, his expected date of supervised release is February 20, 2047.

    b. *Solomon's IADA Waiver and Hearing.*

On May 3, 2023, Solomon made an initial appearance in the instant federal offense. (ECF 21.) The United States moved for detention, and a detention hearing was set for May 8, 2023. (ECF 23.) On May 5, 2023, Solomon submitted a written waiver of his rights under the Interstate Agreement on

Detainers (IADA).  (ECF 29.)  On May 8, 2023, Solomon waived his right to a detention hearing, and this Court ordered Solomon detained.  (ECF 37.)

On May 10, 2023, the United States filed a response opposing Solomon's return to state custody on his IADA waiver.  (ECF 39.)  On May 11, 2023, Solomon filed a reply to the government's response.  (ECF 41.)

On May 16, 2023, this Court held a hearing on the issue.  At the hearing, Solomon cited medical concerns, which include a stroke he suffered in 2010 after he was stabbed in the neck.  (Bail Report at 2.)  He also proffered that he was enrolled in a programming class at MCF-St. Cloud.[1]  At the conclusion of the hearing, the Court ordered Solomon returned to state custody, with emphasis on the interests of medical care and programming.  The United States requested that the Court stay the order for 24 hours to allow the United States to consider requesting review by the District Court.  The Court granted that stay.

---

[1] In light of the timeline necessary for resolution of this issue, this brief has been submitted without the benefit of a transcript.  It is the recollection of the United States that Solomon represented to the Court that he was *enrolled* in a parenting class.  As noted in its letter requesting leave to request reconsideration, the United States does not attribute any erroneous information to Solomon's counsel, who fully and fairly made clear that he had not independently verified proffered information.  On the date of this filing, the United States conferred with Solomon's counsel, who indicated that Solomon may have said, or meant, that he *intended* to enroll in a parenting class.  In any event, as noted below, there are no MCF-St. Cloud parenting classes scheduled, and Solomon is not on the list to be enrolled in any other programming.

c.   *Post-Hearing Information.*

On May 16 and May 17, the United States worked with DOC to verify the information at the hearing. DOC Health Services reports that Solomon has no documented medical concerns, and is on no medications. Solomon's last physical showed no significant medical issues. DOC Education Services reports that Solomon is not enrolled in any programming in MCF-St. Cloud, and is not on the list to be enrolled in any classes or programming.[2] Specifically, he was never enrolled in MCF-St. Cloud's parenting class, which ended on May 12. Records indicate Solomon was enrolled in a parenting class in 2013 when he was incarcerated in MCF-Faribault, but quit the program before completing it. The DOC also noted that there are no parenting classes currently scheduled at MCF-St. Cloud.

The DOC allows inmates to send and receive messages using a private email system called Jpay. The United States received additional information concerning an apparent threat Solomon made to someone Solomon believed to be cooperating with law enforcement. On August 12, 2018, Solomon's Jpay account was used to send an in-custody member of the Bloods a message. Solomon was out of custody at the time. The message contained photographs

---

[2] The DOC confirmed that records indicating Solomon was not on the list to be enrolled in any upcoming classes was not affected by the federal indictment or his transfer to federal custody.

of the transcript of an interview the inmate had with police officers. The message stated "N**** u 12 and I read tha paper." "12" is a common gang reference to police, and accusing someone of being 12 means they are cooperating with law enforcement. "Paper" is a common reference to police reports in discovery. Law enforcement officers read the message to mean "You are cooperating with law enforcement, I saw it in reports." The inmate responded by imploring Solomon to contact the witness's attorney.

In light of this information, on May 17, 2023, the United States filed a letter requesting leave to file a motion for reconsideration. (ECF 54.) That request was granted. (ECF 55.)

## II.  LEGAL STANDARDS

Motions for reconsideration are not codified in federal criminal procedure. *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010). However, they are "a well-established procedural rule for criminal, as well as civil, litigation." *United States v. Healy*, 376 U.S. 75, 80 (1964). Courts frequently apply the same standards to motions for reconsideration in criminal cases as those used in civil cases. *Rollins*, 607 F.3d at 502; *but see United States v. Luger*, 837 F.3d 870, 876 (8th Cir. 2016) (noting the Eighth Circuit has not formally adopted the civil standard for motions for reconsideration in the criminal context). Regardless of whether the civil standard is formally adopted, it is generally understood that a motion for reconsideration should

"afford an opportunity for relief in extraordinary circumstances." *Dale & Selby Superette & Deli v. U.S. Dep't of Agric.*, 838 F. Supp. 1346, 1347–48 (D. Minn. 1993). A motion for reconsideration in a criminal case should be used to correct serious errors or modify decisions if new facts come to light. *See United States v. Dieter*, 429 U.S. 6, 8 (1978) (per curiam).

LR 7.1(j) allows motions for reconsideration where the court has given leave to do based on "compelling reasons."[3]

## II.  ARGUMENT

The United States understands the Court's ruling to have been predicated on Solomon's interest in medical care and in programming, which the Court found outweighed the government's interest in keeping him in federal custody. In light of the information established following the hearing—that Solomon has no significant medical concerns, is not enrolled in any programming, and has shown no interest in availing himself of programming until now—the United States respectfully requests that the Court reconsider its order and remand Solomon to the custody of the U.S. Marshal. Solomon has no medical or programming interests in remaining in MCF-St. Cloud—he

---

[3] LR 7.1(j) appears in a section of the Local Rules applicable to "Civil Motions Practice." However courts in this District apply the same standards in criminal cases. *United States v. Johnson*, No. 16-CR-0193 (WMW/BRT), 2021 WL 424675, at *1 n.1 (D. Minn. Feb. 8, 2021); *United States v. Benjamin*, No. 11-cr-0294 (RHK), 2017 WL 1067742, at *2 (D. Minn. Mar. 22, 2017).

6

is therefore in the same position as his co-defendants, and any other defendant in federal pretrial custody.[4]

Solomon's prior conduct magnifies the government's generalized and particularized interests in keeping him in federal custody in connection with this prosecution. Solomon appears to have used DOC resources to threaten and intimidate a member of the Bloods who Solomon believed was cooperating with law enforcement. As the indictment outlines, this conduct is consistent with the rules and modus operandi of the Bloods gang, which uses threats, intimidation, and violence up to and including murder to prevent people from cooperating with law enforcement, and to punish people who have cooperated with law enforcement. Solomon has shown himself willing to threaten and intimidate witnesses, and to use DOC resources to do so. The United States assesses a significant danger that Solomon will continue to use DOC resources to threaten and intimidate witnesses in this case. This danger is further magnified by the fact that Solomon at best was casual and inaccurate with facts, and appears in fact to have attempted to deceive the Court in an attempt to return to state custody. Federal custody is necessary to maintain direct

---

[4] The United States further incorporates by reference the arguments made in its initial response and at the May 16 hearing about the federal interests in maintaining the defendants in this case under federal control and custody.

supervision to ensure that Solomon does not obstruct or attempt to obstruct justice.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court reconsider its order returning Solomon to state custody, and remand Solomon to the custody of the U.S. Marshal's Service pending the resolution of the indictment.

Dated: May 18, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　ANDREW M. LUGER
　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　*s/ Thomas Calhoun-Lopez*
　　　　　　　　　　　　　　　　　　BY:  THOMAS CALHOUN-LOPEZ
　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　Attorney ID No. 480908DC