UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
*Criminal No.: 23-CR-156(1)(SRN/TNL)*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | **DEFENDANT'S JOINT OBJECTION TO A** |
| vs. ) | **COURTROOM CLOSURE** |
| ) | |
| DESEAN JAMES SOLOMON, ) | |
| LEONTAWAN LENTEZ HOLT, AND ) | |
| MICHAEL ALLEN BURRELL, ) | |
| ) | |
| ) | |
| DEFENDANTS. | |

On July 17, 2024 this matter came before the Court for pre-trial. Among the matters discussed were the possible closure of the courtroom for *voir dire* and limitations on access to the courtroom during trial. Specifically, the Court discussed limiting or excluding media and the general public, including family, from the courtroom for the entire trial and requiring identification to secure admission to the courtroom. Concerns with courtroom security and jury integrity prompt the Court's consideration of potential closures, yet no specific threat has been identified. To be clear, the Court anticipates the proceedings will be available via live stream feed to the Judge Devitt Courtroom and jury room for the public and media. Through counsel, Mssrs. Solomon, Holt and Burrell object to any closure, including reliance on a live feed.

**1. Closures in General**

As the Supreme Court has recognized, where a "trial has been concealed from public view an unexpected outcome can cause a reaction that the system at best has failed and at worst has been corrupted. To work effectively, it is important that society's criminal process 'satisfy the appearance of justice,' and the appearance of justice can best be provided by allowing people to observe it." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (quoting *Offutt v. United States*, 348 U. S. 11, 14 (1954)).

In recognition of this unassailable principle, "the right to attend criminal trials is implicit in the guarantees of the First Amendment," *id.* at 580, and "[w]hat transpires in the court room is public property," *Craig v. Harney*, 331 U.S. 367, 374 (1947). Or as the Eighth Circuit has stated, "We have an open government, and secret trials are inimical to the spirit of a republic, especially when a citizen's liberty is at stake. The public, in a way, is necessarily a party to every criminal case." *United States v. Thunder*, 438 F.3d 866, 867 (8th Cir. 2006). The right of access is not merely a token or theoretical right. That is, the First Amendment is not satisfied if but a few members of the press and the public are able to observe a trial. Rather, the First Amendment right of access is a right of *meaningful* access, and "[t]rial courts are obligated *to take every reasonable measure* to accommodate public attendance." *Presley v. Georgia*, 558 U.S. 209, 210 (2010) (per curiam) (emphasis added).

In *Presley*, for example, this meant that the trial court violated the Constitution when it excluded the defendant's uncle from *voir dire* on the basis that 42 potential jurors would be sitting throughout the courtroom and "[t]here just isn't space for [the

public] to sit in the audience." *Id.* at 210. Likewise, in *Davis v. United States*, the Eighth Circuit concluded that allowing only 25 members of the public to attend a trial when the courtroom could hold 100 spectators was reversible error. 247 F. 394, 395, 398-99 (8th Cir. 1917) (per curiam).

It is in the best interest of all involved for the public access and media coverage of this trial to be fair and accurate and to enhance public understanding of the federal judicial system, including understanding of how juries are carefully selected. The best way to ensure such coverage is to provide both the public and media unfettered access to the trial and the evidence it involves.

In *Waller*, the Supreme Court reaffirmed that a party seeking to close a hearing "must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. 39, 48, 104 S.Ct. 2210, 2216 (1984).

A live feed is not an acceptable alternative, as it is not a replacement for an open courtroom. Observers will not see many of the subtle interactions and will not be able to see and hear all the exhibits as though they were in the courtroom.

2. **Partial Closure:**

Counsel first argues that the Court's proposal to allow the public to view proceedings via live stream is not a partial, but a complete closure for any portion of the proceeding where the public and media are not permitted inside of the actual courtroom where the proceedings are ongoing. A live stream to another location,

despite best efforts, will obscure observers' ability to see in real time what is transpiring in the courtroom. Evidence presented on a screen behind a testifying witness has, in the past, been difficult to see and audio portions can be muffled or excluded entirely.[1]

Whether a closure is total or partial, according to Eighth Circuit precedent, depends not on how long a trial is closed, but rather who is excluded during the period of time in question. *See United States v. Thompson*, 713 F.3d 388, 395 (8th Cir. 2013) citing *Thunder*, 438 F.3d at 868 (explaining that the exclusion of the members of the public and the press during a child victim's testimony is a total closure of the courtroom).

Should the Court allow limited persons and media in the actual courtroom with a live stream to another location, a closure occurs, although it may be considered a partial closure. The Eighth Circuit has held that where the trial court orders only a partial closure, there need only be a showing of a "substantial reason" for the partial closure, as opposed to *Waller's* "overriding interest" requirement. *See Garcia v. Bertsch*, 470 F.3d 748, 752–53 (8th Cir. 2006). The difference between the two standards is not perfectly clear, other than the fact that the reviewing court knows that the 'substantial reason' standard is a more lenient standard than the 'overriding interest' standard. *See United States v. Simmons*, 797 F.3d 409, 414 (6th Cir. 2015) *But see State v. Turrietta*, 308 P.3d 964, 967 (N.M. 2013) (holding Waller's "overriding interest" factor applies in partial closures excluding only some courtroom spectators); *People v. Jones*, 750 N.E.2d

---

[1] This was Counsels experience during the trial in *United States v. Kueng*, 21-CR-108 (PAM/TNL) where media and the public viewed the proceedings from the Devitt Courtroom due to COVID.

524, 529 (N.Y. 2001) (holding, in the partial closure context, that "[w]hen the procedure requested impacts on a defendant's right to a public trial, nothing less than an overriding interest can satisfy constitutional scrutiny").

To be clear, Counsel does not accept the 'substantial reason' distinction to be completely settled and specifically and respectfully asks this Court to apply the compelling/overriding reason standard from *Waller* in this matter.  In *Presley*, the Supreme Court held that the trial court violated *Waller* and the defendant's right to a public trial by excluding a "lone courtroom observer." *See Presley*, at 210, 215-16 (2010). Indeed, the point of the public trial is that "anyone is free to attend." *Press-Enter. Co. v. Superior Ct. of California*, 464 U.S. 501, 508 (1984). If that is not true, the *Waller* analysis is required.

3. **Exclusion of Family Members:**

The Sixth Amendment provides, *inter alia*, that all those accused of a crime "shall enjoy the right to a . . . public trial." U.S. Const. amend. VI.  In *Waller v. Georgia*, the Supreme Court acknowledged the essential character of public trials, explaining that "[t]he requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions."  467 U.S. at 46.  No one is likely more interested in attending a defendant's trial than his friends and family.  Indeed, the Supreme Court recognized this fact more than 75 years ago, declaring that "an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he

may be charged." *In re Oliver*, 333 U.S. 257, 272, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Thus, courts have repeatedly expressed a "special concern" for assuring the attendance of a defendant's family at trial. *See, e.g., Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir. 1994), *cert. denied*, 513 U.S. 1102 (1995) (citing *Oliver*); *see also Carson v. Fischer*, 421 F.3d 83, 91 (2d Cir. 2005) (stating that the "Court takes very seriously" the right to have family present).

> The exclusion of courtroom observers, especially a defendant's family members and friends, even for part of criminal trial, is not a step to be taken lightly. Moreover, it is well-settled that a defendant whose right to a public trial has been violated, need not show that he suffered by prejudice, and the doctrine of harmless error does not apply.

*Guzman v. Scully*, 80 F.3d 772, 776 (2d Cir. 1996).

Admittedly, the right to a public trial is not absolute and, in appropriate circumstances not found here, it may sometimes be restricted where essential to the fair administration of justice. *See Waller v. Georgia*, 467 U.S. at 45 (instructing that a criminal defendant's Sixth Amendment right to a public trial "may give way in certain cases to other rights or interests."). To close a criminal trial over the defendant's objection, each of the following requirements must be shown:

> "[1] the party seeking to close the trial must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure."

*Id.* at 48; *see also Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("[P]roceedings cannot be closed unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

Here, the Court has suggested a desire to limit the presence of family members inside the courtroom to no more than one per defendant. No overriding interest or substantial reason is present to justify such a restriction. Even if such interest were present, limiting family-member spectators to one per defendant (for a total of 3 persons) would be much broader than necessary. Accordingly, the defendants join in respectfully requesting that the Court reconsider any plan restricting or excluding the presence of their family members inside the courtroom beyond reasonable constraints imposed due to courtroom capacity.

4. **Observers Required to Provide Identification:**

This court intimated that any person entering the courtroom would be required to provide government issued identification as a condition of admission. Mssrs. Solomon, Holt and Burrell, through Counsel, object to any requirement for observers to show identification as a closure. As noted above, the point of the public trial is that "anyone is free to attend."

5. **Conclusion:**

Counsel respectfully asks this Court to allow all person from the media and public to enter the courtroom unfettered by numerical restrictions beyond the capacity of the courtroom, and to refrain from requiring those interested to produce a government-issued identification.

    Respectfully submitted,

Dated: July 26, 2024    /s/ Thomas C. Plunkett
    Thomas C. Plunkett

       Attorney No. 260162
       Attorney for Defendant
       101 East Fifth Street
       Suite 1500
       St. Paul, MN 55101
       Phone: (651) 222-4357
       Fax: (651) 297-6134
       Email: tcp@tp4justice.com

Attorney for Desean James Solomon

*s/F. Clayton Tyler*
*s/Karen E. Mohrlant*
F. Clayton Tyler, #11151X
Karen E. Mohrlant, #388093
331 Second Ave S, Suite 230
Minneapolis, MN 55401
Phone: 612-333-7309
Fax: 612-333-5919
Email: fctyler@fctyler.com
kmohrlant@fctyler.com

Attorneys for Leontawan Lentez Holt

*s/Steven E. Wolter*
Steven E. Wolter, #170707
Kelley, Wolter & Scott, P.A.
431 S 7th Street, Suite 2530
Minneapolis, MN 55415
Phone: 612-371-9090
Fax: 612-371-0574
Email: swolter@kelleywolter.com

Attorney for Michael Allen Burrell